(No. 14580.—Reversed and remanded.)

THE SPRINGFIELD DISTRICT COAL MINING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (JOHN JACKSON, Defendant in Error.)

*Opinion filed June 21, 1922.*

1. WORKMEN'S COMPENSATION—*when employee having a pre-existing disease is not entitled to compensation for injury.* Although an employee suffers from a pre-existing disease, an injury may be said to arise out of the employment if the pre-existing condition is accelerated in a material degree by the accident or injury, and the employee will be entitled to an award notwithstanding the disease, but he is not entitled to compensation for a condition resulting from a pre-existing disease and not from the injury.

2. SAME—*the Supreme Court is governed by law in force when judgment is entered below.* The Supreme Court, in reviewing a compensation case, is governed by the law in force at the time of the entry of judgment in the circuit court.

3. SAME—*decision of Industrial Commission must be based upon facts.* The decision of the Industrial Commission must be based upon facts in evidence and cannot rest upon conjecture and surmise.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

T. W. QUINLAN, for plaintiff in error.

KERR, MACDONALD & MURPHY, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

John Jackson, the applicant, filed a claim before the Industrial Commission for compensation on account of an injury sustained while working for plaintiff in error in the line of his employment. The matter was referred to an arbitrator, who found on June 4, 1919, that the applicant was not entitled to recovery under the Workmen's Compensation act. On appeal to the Industrial Commission, that body, on hearing, entered an order March 10, 1920, awarding applicant $9.76 a week for 358 weeks and $5.92 for one week and thereafter a pension for life of $23.33 a month, also awarding $30 for medical aid. That finding of the Industrial Commission was taken to the circuit court, and on March 1, 1921, the finding was reversed and the cause remanded to the commission, and the remanding order was filed with the commission April 11, 1921, the circuit court holding that the award of the commission was excessive and that the finding of total disability is not sustained by the evidence. On a rehearing before the commission additional evidence was taken, and the commission found on June 23, 1921, that the applicant should recover $6.76 per week for 416 weeks for partial disability. This second finding was taken to the circuit court of Sangamon county December 23, 1921, by *certiorari,* and the award of the commission was affirmed, and the cause has been brought here by writ of error for review.

Jackson, the applicant, was fifty-six years of age at the date of the alleged accident, and had been working, off and on, for years as a miner for the plaintiff in error. It is conceded that on September 18, 1918, the relation of em-

303—34

ployer and employee existed, that the applicant's earnings for the preceding year were $1015.26, and that both parties were subject to the provisions of the Workmen's Compensation act. The applicant claimed that he was injured on September 18, 1918, by being overcome with bad air and that he received a complete permanent disability therefrom. The evidence seems to show clearly that on the day in question the applicant was compelled by physical disability to leave the mine of plaintiff in error where he was working, and one of the important questions to be decided is whether or not this physical disability was caused by breathing bad air in the mine or whether his physical condition on that day was caused by former disabilities, some of which were, in their nature, organic.

There was evidence offered by the applicant himself, and by other witnesses, to the effect that the ventilation in the room of the mine where the applicant worked was very poor on September 18, 1918; that there was no cross-cut in that room and that the air was thereby rendered foul. There was considerable testimony on the part of the coal company that there was a cross-cut through the room at the time in question which furnished sufficient fresh air for the miners working in that room or adjacent thereto. The applicant testified that he was overcome in the room by bad air, which was caused by a blue kind of gas or smoke in the room, which choked him; that he went for a drink of water; that he then got his shovel and started to work again and the gas caught him; that he began to get weaker and sat down in the middle of the track, becoming unconscious; that when he came to his senses he was nervous, had a headache, and his eyes felt as if they would pop out; that he succeeded in getting to the opening in the mine; that on the way he passed the face boss and told him the air had caught him and that he could not do anything; that at the bottom of the shaft he met the bottom boss and told him he was sick and wanted to go to the top; that he went

home and sent for Dr. McMahon, who had previously treated him. The applicant testified that he had been in fairly good physical condition before September 18, 1918, but had never been well since that date, and that his physical condition was caused by the bad air in the mine on that date; that a few days after he went back to the mine and tried to work but could not stay.

Dr. McMahon, who treated Jackson, testified that the applicant had bronchial asthma and a sympathetic heart affection with it; that this affection is sometimes called miner's asthma; that when he was called on September 18, 1918, it was his opinion that the applicant had been affected by bad air, which brought about the acute physical condition that he was in on that day; that the bad air of the mine had affected his bronchial trouble and aggravated his heart trouble, but that this would not have rendered his physical condition permanent. The doctor testified also that previous to September 18, 1918, he had treated the applicant and found him in a condition somewhat similar to that he was in on September 18; that miner's asthma was a progressive disease and the condition would become more acute; that the bad air would cause the bronchial tubes to tighten up and that the heart would beat faster and that the applicant could not talk above a whisper. As we understand the testimony of Dr. McMahon, he had treated Jackson when in a similar condition before September 18, 1918, and considered his physical condition of long standing, which was aggravated on the day in question by the bad air in the mine.

Dr. Ware was called in by the applicant to treat him in October, 1918, and testified that he found his bronchial tubes affected and that his heart had a valvular insufficiency; that the heart condition was organic; that the condition of the bronchial tubes and heart looked as if it were of some little standing.

Dr. Lockwood was called as an expert by plaintiff in error and was asked a hypothetical question presenting the facts as to the applicant's condition, and testified, in effect, that he did not think that that condition was caused by gas or bad air in the mine, and that a man in that condition who became sick in a mine would be nauseated and obliged to leave the mine because of gas or bad air but that such gas or bad-air would not produce a permanent disability, although it might aggravate the symptoms and cause him to be temporarily unable to work.

On the second hearing before the Industrial Commission Dr. Deal testified that he had examined the applicant on April 6, 1921, and found a man rather robust, rather fat for his height, and about sixty years old; that he gave a history of becoming dizzy in the mine in 1918;. that he walked to the bottom and got into the fresh air but felt no better; that on going home he was confined to his bed for a little time and then came to Springfield the second day, and has been up and around ever since but is unable to work except at light work; that from witness' observation and the history of the case it was his opinion that the applicant had emphysema of the chest; that he had a heart murmur and a blood pressure of 175; that an X-ray examination showed that he had aneurism of the aorta; that the enlarged aorta, the heart murmur and the emphysema were all organic conditions that would not be caused by applicant coming in contact with black damp in the mine; that these organic conditions would affect his ability to work and would cause symptoms as applicant stated, and also might cause him to lose his voice by the pressure of the aneurism on the nerve; that he did not believe that the applicant's condition at the time witness examined him in April was caused by the bad air or gas in the mine; that his condition was organic, which had lasted for a long time.

Under the decisions, whatever the pre-existing physical condition of the applicant may be, if an accident or condi-

tion of the employment is the immediate occasion of the injury it will be held that the injury arose out of the employment because it develops within it; that when the exertion or condition of the employment acts upon the weakened condition of the body of the employee or upon an employee predisposed to suffer injury, in such a way that a personal injury results, the injury must be said to arise out of the employment if the pre-existing condition is accelerated in a material degree by the accident or condition. (*Big Muddy Coal Co.* v. *Industrial Board,* 279 Ill. 235.) It has long been held that an employee is entitled, under the Workmen's Compensation act, to be compensated for every accidental injury suffered in the course of his employment and arising out of the same; that the measure and limit of his right is that the injury sustained is the proximate cause of the incapacity for which compensation is sought; that the previous physical condition of the employee is unimportant, and he may recover for permanent incapacity which results from an accident independently of pre-existing disease but is not entitled to compensation for a condition resulting from a pre-existing disease and not from an injury suffered in the course of the employment and arising out of it; that if there is a pre-existing disease the employee is entitled to recover for all the consequences attributable to the injury by the acceleration or aggravation of such disease; that such aggravation or acceleration, permanent and progressive in its nature, would entitle the employee to compensation to the extent and in the proportion in which the pre-existing disease is increased or aggravated. (*Springfield District Coal Co.* v. *Industrial Com.* 300 Ill. 28.) The evidence in the record, other than that given by the applicant, most clearly shows a pre-existing disease which the applicant had for some time prior to September 18, 1918, and while the testimony of the applicant himself is not in entire harmony as to his physical disability before September 18, his testimony, taken in connection with the other

testimony in the record, in our judgment shows, practically beyond controversy, that he did have a pre-existing disease as to the bronchial tubes and heart prior to that date which might have been aggravated by bad air in the mine to which he was exposed on that date, but that the effects of bad air which he may have breathed on September 18 would not be so permanent that his physical condition at the time of the second hearing before the Industrial Commission could properly be held to have been caused by this bad air to which he was subjected on the date in question.

On a hearing on the writ of error in this court it must be held that the court is governed by the law in force at the time of the entry of judgment in the circuit court. The most that can be said from this record is that the bad air to which applicant testified he was subjected in the mine on September 18, 1918, might have aggravated his pre-existing physical condition so as to entitle him to compensation for a temporary disability, but the evidence furnishes no basis for finding to what extent the bad air contributed to the applicant's incapacity or the relative proportions which the pre-existing disease and bad air contributed to the cause of his physical incapacity. The conclusion from the record as to the percentage of the incapacity which existed because of the bad air is entirely speculative. It has been frequently said by this court that the decision of the Industrial Commission must be based upon facts in evidence and cannot rest upon conjecture and surmise. (*St. Louis Smelting Co.* v. *Industrial Com.* 298 Ill. 272; *Hafer Washed Coal Co.* v. *Industrial Com.* 293 id. 425; *Edelweiss Gardens* v. *Industrial Com.* 290 id. 459.) The possibility of the bad air being the cause of the applicant's condition at the time of the finding is not sufficient to justify such a finding as was made by the Industrial Commission and affirmed by the circuit court.

For the above reason the judgment of the circuit court will be reversed and the cause remanded to that court, with

directions to remand the cause to the Industrial Commission for a determination of the right to compensation, and for a further hearing, if desired by either party, on the question as to the proportion of applicant's physical incapacity caused by his being subjected to the bad air or gas in the mine, and for such further proceedings as may be authorized by law.

*Reversed and remanded, with directions.*