(No. 20018.—

THE CARSON-PAYSON COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(GERTRUDE CLARK, Defendant in Error.)

*Opinion filed October 25, 1930.*

CHARLES S. ANDRUS, for plaintiff in error.

O'HAIR & McCLAIN, for defendant in error.

Mr. COMMISSIONER EDMUNDS reported this opinion:

Gertrude Clark filed with the Industrial Commission her claim for compensation, alleging that her husband, Edward Clark, died as the result of an accident sustained in the course of his employment by the Carson-Payson Company, plaintiff in error. The arbitrator held that Mrs. Clark was entitled to compensation and awarded her $3750. This award was sustained by the Industrial Commission. The award of the commission was affirmed by the circuit court of Sangamon county, and the cause is here upon writ of error allowed for further review.

On March 14, 1928, Clark was working in a school building at Alton, Illinois, where plaintiff in error had a contract to install plumbing, ventilators and a heating plant. Edward VanHoy, a carpenter employed by another contractor, testified that on that date he was working in the same room, about four feet distant from Clark; that Clark and another man were setting a motor; that Clark "picked up that motor and shifted it around in the position it would go, and that is when he fell back on the trestle—he sat back on my own trestle;" that he just sat back on the trestle and commenced to pat himself on the chest and panted "some-

thing awful;" that witness and the man working with Clark took hold of him, but witness thought he was breathing easier so returned to his work; that witness looked around and saw Clark right near a hole sunk in the concrete, whereupon he left his work and grabbed Clark and with another man walked him around for about twenty minutes; that they carried him to the gymnasium room and fanned him until a doctor was called. On cross-examination witness said that Clark did not lift the motor clear off the ground—that "a man of his size can't pick up things like that"—but that he saw him "make a lift and twist" getting it in line.

Dr. M. Pheiffenberger testified that on the date in question he was called to the school building, where he found Clark lying on the floor of the gymnasium; that he was suffering from dyspnea, or air hunger; that he was in a condition requiring hospitalization, and witness had him taken to the hospital in an ambulance; that witness had him put in bed with ice bags over his heart and gave him morphine hypodermically; that at seven o'clock the next evening he was more comfortable than at any time "since the accident;" that witness next saw him three hours later, about five minutes after he died; that witness was present at a post mortem held the following day; that upon opening the chest cavity there was found a bulging of the membrane which covers the chest wall, the bulging being produced by a large blood clot that had occurred, due to a rupture of a dilated aorta; that the rupture was large enough to admit the index finger of the doctor holding the autopsy; that in his opinion the aorta through some process had so degenerated that there was a sudden pressure from contraction of the muscles of the body through some muscular effort producing enough positive pressure to rupture this large artery and allow the blood to escape into the space known as the mediastinum, or that portion situated between the anterior and posterior chest wall and the space occupied

by the two lungs; that "this rupture could occur through any undue muscular effort;" that W. H. Carson, of the Carson-Payson Company, called witness on the telephone and wanted to have arrangements made for the post mortem so Carson could take the body to Terre Haute, Indiana, on a certain train; that witness talked to Carson before the post mortem and told him that in the opinion of witness Clark's death was due to ruptured aneurism of the aorta; that after the post mortem witness told Carson that they had found a rupture of the aorta on the posterior portion of the arch, allowing the hemorrhage to occur into the tissues between the posterior chest wall and the parietal pleura and into the mediastinum, and that death had occurred from this rupture. Upon cross-examination witness stated that the heart had probably been the same size for months or years before; that it was twice as large as normal and the aorta was dilated to a capacity about four times the size of normal; that there had been a degeneration of a portion of the wall, leaving it in a very weakened condition; that an aorta in that condition might be ruptured while walking "if extra muscular effort was required;" that the aorta sometimes ruptures when a man is not engaged in physical labor "if it tightens the muscles;" that he had seen aortas large enough to protrude out in front of a chest and be large enough to put a baby's head in when they rupture, and that if diseased badly enough the aorta is ruptured in sleep.

Horace Tousley testified that he was architectural inspector for the school where Clark was employed; that within thirty minutes after Clark's collapse he talked by telephone with Carson at the Danville office and told him that Clark had collapsed, and that Carson told witness to see that everything was done for Clark; that witness had a second conversation with Carson later that afternoon and told him that Clark had been taken to the hospital; that witness talked to Carson again after Clark was dead, and

he said he was planning to come down; that witness talked with Carson after the latter came down, with reference to getting Clark's belongings and taking care of the funeral arrangements, and that Carson took Clark's body back to Terre Haute, Indiana.

Plaintiff in error contends that there was no jurisdiction to make the award because no notice was given, as required by section 24 of the Workmen's Compensation act. (Cahill's Stat. 1929, chap. 48, par. 224.) As authority for this contention, *Bushnell* v. *Industrial Board,* 276 Ill. 262, and *Garden City Foundry Co.* v. *Industrial Com.* 307 id. 76, are cited. In the *Bushnell case* no formal notice was given the employer, and the knowledge of the facts and circumstances relied upon as dispensing with the necessity for notice consisted of a conversation which the employer's foreman had with the injured man the day after the injury when the foreman saw him limping and asked him what was the matter, the reply being that he had hurt his leg tearing up the floor, and a further conversation some days later when the foreman saw him limping and asked what the matter was, and was told that it was a "game leg." The court said: "It is not claimed that in either of the conversations it was intimated to the foreman of plaintiff in error that the injury was serious, or that Stewart had any cause for or intention of making a claim for compensation under this act on account of such injury, or that the foreman had any knowledge of the facts and circumstances of such injury other than that obtained from the conversations just related." In the *Garden City Foundry Co. case* the only evidence of notice consisted of a statement of the injured employee that he called up the employer's superintendent, Schindler, and "told him the case and how it started." The court said: "What the witness told Schindler does not appear in the record. He merely stated a conclusion that he told him the case and how it started. We can hardly conceive how any attorney would undertake to argue that this

is proof of notice. A witness should state facts and not mere conclusions." The situation in the within case is altogether different. Clark died the next day after his collapse. Within thirty minutes after such collapse Carson was informed of it. Over the telephone Carson discussed the matter of a post mortem. Later he came to Alton, talked about the cause of death with the doctor who attended Clark and who witnessed the post mortem, and took Clark's body away for burial. In *Chicago Rawhide Co.* v. *Industrial Com.* 291 Ill. 616, where the point was made that no sufficient notice had been given, the court called attention to the provision of section 24 that no defect or inaccuracy of the notice should be a bar to the maintenance of proceedings unless the employer proves that he is unduly prejudiced in such proceedings by such defect or inaccuracy, and said: "The plaintiff in error knew of the death of the employee and his name and address. Mrs. Tophoven testified that she told the president of the corporation on the day of her husband's funeral that he died from anthrax poisoning from a poisoned hide. This was as specific notice as it was possible to give at the time. The plaintiff in error knew where the deceased worked and when he stopped working. It was as well acquainted with the facts and had as good means to learn the circumstances and cause of the accident as Mrs. Tophoven, and the record does not indicate any reason why the plaintiff in error was unduly prejudiced by reason of any defect or inaccuracy in the notice." With equal propriety it may be said here that plaintiff in error knew of the death of Clark and his name and address, as well as where he worked and when he stopped working, and that he died from ruptured aneurism of the aorta. Plaintiff in error was as well acquainted with the facts and had as good means to learn the circumstances and cause of the accident as defendant in error, and the record does not indicate any reason why it was unduly prejudiced by reason of any defect or inaccuracy in the

notice. It must be held, therefore, that sufficient notice was had. *Simpson Co.* v. *Industrial Com.* 337 Ill. 454; *Valier Coal Co.* v. *Industrial Com.* 320 id. 69; *Yellow Cab Co.* v. *Industrial Com.* 315 id. 235; *Jefferson Printing Co.* v. *Industrial Com.* 312 id. 575; *Omaha Supply Co.* v. *Industrial Com.* 306 id. 384; *Field & Co.* v. *Industrial Com.* 305 id. 134; *Hydrox Chemical Co.* v. *Industrial Com.* 291 id. 579; *Wabash Railway Co.* v. *Industrial Com.* 286 id. 194.

Another contention of plaintiff in error is that the evidence does not show that Clark's death was occasioned by an accidental injury arising out of and in the course of his employment. It is a settled rule that the claimant, under the Compensation act, must prove by direct and positive evidence, or by evidence from which the inference can be fairly and reasonably drawn, that the accidental injury arose out of and in the course of his employment. (*Standard Oil Co.* v. *Industrial Com.* 339 Ill. 252; *Berry* v. *Industrial Com.* 335 id. 374.) But although the onus of proving that the injury arose both "out of" and "in the course of" the employment rests upon the applicant, these essentials may be inferred when the facts proved justify the inference. If the facts proved give rise to conflicting inferences of equal degrees of probability, so that the choice between them is mere matter of conjecture, then the applicant fails to prove his case; but where the known facts are not equally consistent, where there is ground for comparing and balancing probabilities at their respective value, and where the more probable conclusion is that for which the applicant contends, the arbitrator is justified in drawing an inference in claimant's favor. (*Heyworth* v. *Industrial Com.* 321 Ill. 298; *Vulcan Detinning Co.* v. *Industrial Com.* 295 id. 141; *Peoria Terminal Co.* v. *Industrial Board,* 279 id. 352.) Even where a workman dies from a pre-existing disease, if the disease is aggravated or accelerated under certain circumstances which can be said to be accidental, his death results from injury by accident. *Simpson Co.* v. *Industrial*

*Com. supra; Cameron, Joyce & Co.* v. *Industrial Com.* 324 Ill. 497; *Springfield Coal Co.* v. *Industrial Com.* 303 id. 455; *Peoria Terminal Co.* v. *Industrial Board, supra.*

The evidence disclosed by the record of the within case is very similar to that in *Hughes* v. *Clover, Clayton & Co.* (1909) 2 K. B. 798, 102 L. T. R. 340, where a workman while tightening a nut with a spanner fell back on his head and died. A post mortem examination showed that there was a large aneurism in the aorta and that death was caused by a rupture of the aorta. The aneurism was in such an advanced condition that it might have burst while the man was asleep, and a very slight exertion or strain would have been sufficient to bring about a rupture. The trial judge found that the death was caused by a strain arising out of the ordinary work of the deceased, operating upon a condition of body which was such as to render the strain fatal, and held that it was an accident within the meaning of the Compensation law. This decision was upheld by the court of appeals and the House of Lords. In giving his opinion Lord Chancellor Loreburn said: "It may be said, and was said, that if the act admits of a claim in the present case, everyone whose disease kills him when he is at work will be entitled to compensation. I do not think so, and for this reason: It may be that the work has not, as a matter of substance, contributed to the accident though in fact the accident happened while he was working. In each case the arbitrator ought to consider whether, in substance, as far as he can judge on such a matter, the accident came from the disease alone, so that, whatever the man had been doing, it would probably have come all the same, or whether the employment contributed to it. In other words, did he die from the disease alone, or from the disease and employment taken together, looking at it broadly. Looking at it broadly, I say, and free from overnice conjectures, was it the disease that did it or did the work which he was doing help in any material degree?"

Another similar case is *Lancaster* v. *Blackwell Colliery Co.* 122 L. T. R. 162, where a collier, apparently in his usual health, was doing his regular work of lifting tubs when he complained of pain in his stomach, which he attributed to indigestion. He went home in severe pain and saw his doctor. Later on, vomiting commenced and continued for several days. He was taken to a hospital and operated upon for internal strangulated hernia, from the effects of which he died. On a claim for compensation the medical evidence showed that the hernia might have been caused by a variety of strains, such as sneezing, coughing or strain at work, but all the doctors agreed that if the strain were contemporaneous with strain at work they would have attributed it to such strain. The county court judge drew the inference that the hernia was caused by strain at work and awarded the widow compensation. The court of appeals set the award aside on the ground that the evidence was equally consistent with death being from natural causes as from accident, and therefore the widow had not discharged the onus of proving it to be due to accident. This judgment was reversed by the House of Lords. Lord Chancellor Birkenhead said: "Where a reasonable man might hold that the more probable conclusion is that for which the applicant contends, then the arbitrator is justified in drawing an inference in his favor. That view of the law has been stated in this House repeatedly and it is not open to challenge to-day. On the view which I have formed of the facts in this case I think the court of appeals were wrong in holding here that the facts proved gave rise to conflicting inferences of equal degrees of probability. I think, on the contrary, that there was ground here for comparing and balancing the probabilities, and I think that the learned arbitrator was fully entitled, on the facts proved before him, to form the view that the more probable conclusion was that for which the applicant contends."

In *Patrick* v. *Ham Co.* 119 Me. 510, 111 Atl. 912, Patrick was helping to load a car with 100-pound sacks of grain. A fellow-employee noticed that he lurched a little in handling two of the bags, successively, and in stooping to pick up the next one he fell across it and shortly after became unconscious, dying that same night from cerebral hemorrhage. The Industrial Board found that death was due to a personal injury by accident arising out of and in the course of the employment. This finding was upheld, the court saying: "The question before the commission was whether the work that he was doing on the afternoon of October 13, 1919, caused the cerebral hemorrhage to then occur. If so, we think it was an accident arising out of and in the course of his employment. This was a question of fact. The Industrial Accident Commission, through its chairman, has decided this question of fact in favor of the claimant. The finding is, we believe, supported by rational and natural inferences from proved facts."

This court dealt with a like problem in *Baggot Co.* v. *Industrial Com.* 290 Ill. 530, where it appeared that two workmen, Cripps and Brodie, were operating a windlass by which heavy loads of pipe were being hoisted to the sixth floor of a building under construction. After the last load had been hauled up Cripps started to walk away from the windlass and was seen to be spitting blood. Brodie asked him what was the matter, but Cripps was unable to talk. Hemorrhages ensued and about two weeks later Cripps died. A post mortem examination disclosed a large longitudinal tear and several smaller transverse tears in the walls of the aorta. Prior to the date of the accident Cripps had never suffered from hemorrhage or any trouble with heart or lungs. Compensation was awarded. In holding that the award should be sustained it was said: "The circumstances were clearly such that the commission was justified in finding that the hemorrhage was due to blood pressure intensified by vigorous muscular exertion. Relat-

ing the hemorrhage to physical exertion, rupture of the aorta by force from within was as distinctly traumatic as if the canal had been severed by violent application of a sharp instrument from without. There was no direct evidence of extraordinary exertion suddenly displayed. When last observed before the first hemorrhage the deceased was working in the manner habitual to his employment. The fact remains, however, that an extraordinary and unforeseen thing suddenly and unpremeditatedly occurred, and presence of all the essential attributes of accident cannot be gainsaid. There was ample evidence in the record to justify the finding of the Industrial Commission that the deceased came to his death by accident, and the circuit court therefore properly confirmed the award." The court proceeded to comment upon the case of *Jakub* v. *Industrial Com.* 288 Ill. 87, strongly relied upon by plaintiff in error here, and after pointing out that the court in that case confirmed the finding of the Industrial Commission that the deceased did not sustain accidental injuries arising out of and in the course of his employment and that there was no evidence that any part of the body was broken, by exertion or otherwise, said: "It is essentially a different judicial problem to set aside a decision of the Industrial Commission which finds that a certain state of facts proves that the death resulted from accidental injuries, than to confirm a decision of the commission that the death was not by accident."

Another decision of this court in which a similar situation was involved is *Peoria Terminal Co.* v. *Industrial Board, supra.* There a railway fireman fell from an engine and was found unconscious along the right of way. The road-bed was practically level, and the testimony was that the engine was running smoothly. The last time anyone saw the fireman he was engaged in his duties of firing the engine. The testimony of witnesses riding on the engine was that they saw nothing that morning while he was at work which indicated in any way that he was not in good

health. Shortly after he was found he died at a hospital without regaining consciousness. As the result of an autopsy two doctors testified that he died from a hemorrhage of the brain and that there had been a brain condition present which predisposed him to such a hemorrhage. One doctor testified that the fall could aggravate such a condition and hasten results; also that the exercise of shoveling coal might cause a ruptured blood vessel. The other doctor testified that while the fall could have caused the rupture the hemorrhage might have been spontaneous. On this state of the evidence this court sustained the judgment of the circuit court, which upheld the award of the arbitrator and Industrial Board, our conclusion being that the inference that the proximate cause of death was the fall from the engine was more reasonable than any other inference that could fairly be drawn from the evidence.

In the within case there is direct evidence to the effect that immediately after exerting himself in shifting the motor Clark fell or sat back on a trestle, panted hard and gave other visible manifestations of discomfort in his chest. The medical testimony was that he died from rupture of the aorta, and that his bodily condition was such that the rupture could occur through any undue muscular effort. Without indulging in any overnice conjecture, it must be said that the award has substantial foundation in the evidence, and the arbitrator was fully entitled, on the facts proved before him, to form the view that the more reasonable conclusion was that for which the applicant contends.

The judgment of the circuit court confirming the award was therefore proper, and it is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*