(No. 3597— ■■■■■■)

ETTA MANDELL, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed January 13, 1942.*
*Rehearing denied March 11, 1942.*

ROY A. PTACIN, for claimant.

GEORGE F. BARRETT, Attorney General; WILLIAM L. MORGAN, Assistant Attorney General, for respondent.

ECKERT, J.

The claimant, Etta Mandell, is employed as an attendant at the Chicago State Hospital, a public institution, owned and operated by the State of Illinois, under the direction of the Department of Public Welfare. The hospital operates a power house, producing its own steam for heating, and generating electricity for lighting, has an electrical system carrying power and operating signals, owns and operates an electric sewing-machine, an electric saw, an automobile and three trucks, and also owns and operates with electricity certain elevators in one of the buildings forming a part of the institution. On February 23, 1941, while cleaning up after the feeding of patients at the institution, claimant slipped on some butter which had fallen to the floor and sustained an injury to her left leg and knee. She was furnished necessary

first aid and medical treatment by the respondent, and continued her work.

The day after the accident, claimant complained of severe pain, and was admitted to employees' hospital where she remained until March 21st, 1941. Medical and hospital services were furnished by the respondent, and claimant was given light and diathermy treatment. She also received her regular pay while she was so incapacitated. Following her discharge from the hospital, she went to California to visit her sister. Her earnings at the time of the accident were $63.00 per month and maintenance in the amount of $18.00 per month. Her average annual earnings for the year preceding the accident were $972.00, and her average weekly wage was $18.69. She was then fifty-two years of age, married, but had no children under sixteen years of age. No claim is made for medical or hospital services, nor for temporary total or partial disability, but claimant asks for an award in the amount of $488.30 for a twenty-five per cent loss of use of her left leg. Notice of the accident and claim for compensation were made within the time provided by the Workmen's Compensation Act.

Claimant testified that as a result of the accident her leg swells up and "clicks"; that she has a great deal of pain when she is on her feet for any length of time; that she cannot walk without a limp, and that she cannot bend her knee backward or forward.

Dr. Albert C. Field, a witness called on behalf of the claimant, testified that he examined Mrs. Mandell on April 17th, 1941, making a comparative examination of both her lower extremities, and of both her knees. He testified that the right knee measured eighteen and one-half inches and the left knee nineteen inches; that on active motion her right knee could be flexed to within five inches of the buttocks, and the left knee to within fourteen and one-half inches; that there was some swelling of the left calf, about three-fourths of an inch enlargement; that the capsule was somewhat thickened; that there was no fluid in the joint; that the patella was slightly restricted, and that there was crepitation on manipulation. He also testified that he took an x-ray of her left knee which disclosed an irregularity at the superior border of the attachment of the quadriceps femination muscle. In the opinion of Dr. Field, Mrs. Mandell was then suffering from a thirty-five

per cent disability of her left leg; on cross examination he stated this might be caused by an arthritic condition as well as by the injury. He also testified that from the x-ray he found some slight lipping of the joint suggestive of an arthritic condition.

Dr. Louis Olsman, called on behalf of the respondent, testified that an x-ray, taken on the second morning following the accident, showed no evidence of fracture, but showed a little roughening of the articular surface, indicating rheumatic arthritis. From the injury revealed by an x-ray taken at the time of the hearing, Dr. Olsman stated that there was a permanent disability amounting to approximately ten per cent.

Following the testimony of Dr. Field and Dr. Olsman, a further examination of the patient was made by the two doctors jointly, at the conclusion of which Dr. Olsman testified, ''I boosted my ante and we lowered his. We will settle for twenty-five.''

Under Section 3 of the Workmen's Compensation Act, the provisions of that Act apply automatically to the State when it is engaged in any of the enterprises therein enumerated and which are declared to be extra-hazardous. From the testimony in this case, it appears that the State, in the operation of the Chicago State Hospital, is engaged in such an extra-hazardous enterprise. *Miele* vs. *State of Illinois*, 9 C. C. R. 170; *Lynch* vs. *State of Illinois*, 9 C. C. R. 290. The enterprise being extra-hazardous, all employees of the institution come within the provisions of the Act irrespective of whether or not they themselves are directly exposed to the hazard. *Ascher Bros.* vs. *Industrial Commission*, 311 Ill. 258; *Illinois Publishing Company* vs. *Industrial Commission*, 299 Ill. 189. At the time of the injury in question, it is apparent that the claimant and respondent were operating under the provisions of the Workmen's Compensation Act, and that the injury arose out of and in the course of employment.

The claimant, however, has the burden of proving the causal connection between the accident and the condition or incapacity which constitutes her claim for compensation. *Sanitary District* vs. *Industrial Commission*, 343 Ill. 236; *Sears, Roebuck & Company* vs. *Industrial Commission*, 334 Ill. 246. Liability cannot rest upon imagination, speculation or conjecture, but must be based upon facts established by a

preponderance of the evidence. *Springfield District Coal Company* vs. *Industrial Commission*, 303 Ill. 528. It cannot rest upon a choice between two views equally compatible with the evidence. *Rittler* vs. *Industrial Commission*, 351 Ill. 338; *Carson-Payson Company* vs. *Industrial Commission*, 340 Ill. 632.

The medical testimony in this case shows that both doctors were unable to determine whether or not the claimant's alleged disability is a result of the injury or is caused by an arthritic condition which existed prior to the injury. In the report made by the managing officer of the Chicago State Hospital on October 8th, 1941, it was stated that the x-ray taken at the time of the accident revealed no fracture but did show evidence of an old arthritic condition; that claimant was hospitalized for thirty days because of her persistent complaint of pain although there was no evidence of such an injury as to account for the patient's symptoms. Dr. Olsman also stated that the x-ray, taken at the time of the accident, showed no evidence of fracture, but did indicate rheumatic arthritis. Dr. Field, claimant's own witness, stated that the alleged disability might be caused by an arthritic condition as well as by the injury, and that an x-ray taken in April, 1941, was suggestive of an arthritic condition. A month after the accident, claimant was sufficiently recovered to make a trip to California; upon her return, she resumed her former position.

It appears from the evidence that claimant has not sustained her burden of proving the causal connection between the accident and her alleged incapacity; that any liability in this case would be based, not upon the facts, but upon conjecture; that there are two views equally compatible: (1) that claimant's disability is a result of the injury; (2) that claimant's disability is a result of a prior arthritic condition.

An award must therefore be denied.