(No. 3799—

MAY ARNOLD, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 9, 1944.*

J. W. KOUCKY, for claimant.

GEORGE F. BARRETT, Attorney General; WILLIAM L. MORGAN, Assistant Attorney General, for respondent.

ECKERT, J.

On August 29, 1942, the claimant, May Arnold, was employed by the respondent as an attendant at the Chicago State Hospital. She alleges that while in the discharge of her duties as such attendant, she was struck on

the left foot by a falling stretcher, and that as a result, she sustained a specific loss of the use of her left foot, big toe, and little toe.

On the hearing, claimant testified that at the time of the alleged accident, she was taking a patient to the hospital on a stretcher carried by four other patients; that one of the patients let the stretcher drop, and the wooden end of one handle struck her left foot; that she reported the accident to her supervisor who sent her to Dr. Olsman, an employee of the hospital; that Dr. Olsman examined her foot, found no break, but advised that she bathe the foot with hot applications to keep the swelling down. Claimant then returned to her home, reporting for work on the next day.

Claimant also testified that in December, 1942, her foot hurt her too badly to continue her work; that she was advised to see Dr. McCorry, who was employed at the hospital; that Dr. McCorry advised her to see ''a good outside chiropodist.'' During January or February, 1943, claimant consulted Dr. Cohen and Dr. Barnai, both employed at the hospital. An x-ray was taken on April 9, 1943. Claimant also consulted other doctors, including a Dr. Rose, and a Dr. Vaughn, neither of whom was connected with the hospital. She testified that Dr. Vaughn advised her that ''vitamin D was the only thing that would help.'' She complains of constant pain in her foot; that because of the pain she walks sideways on her foot; and that she cannot put any weight on her foot.

From the report of the Department of Public Welfare, it appears that claimant worked regularly from August 30, 1942, until January 23, 1943, when she took a vacation. She returned to work on February 18, 1943, worked for 4 days, reported that she was sick on February 22, 1943, remained away from work for 4 days,

and thereafter returned to duty. She has continued to work since that time with the exception of the period from July 1, 1943, to July 12, 1943, when she was confined to her home with influenza.

Dr. Albert C. Field, called as a witness on behalf of the claimant, testified that he first examined claimant on August 27, 1943; that he examined the x-rays which had previously been taken of claimant's foot and also took x-ray picture at that time; that in his examination, her left foot disclosed a marked relaxation of the transverse arch, a hyperextension of the toes with painful and palpable metatarsal heads, little movement, if any, in the distal phalangeal joint of the first toe, crepitation and pain on manipulation, and calosity beneath the first metatarsal phalangeal joint, which is enlarged and somewhat deformed. He testified that the x-ray taken on August 27, 1943, showed some evidence of interference with the circulation in the distal ends of the first and second toes, decalcification, some evidence of bony changes present, especially in the condyles of the first toe, distal phalangeal, the joint space somewhat narrowed due to depression of the joint, and the cartilage making up the space. He stated that the bony changes also appeared in the second toe in the distal phalanx. Dr. Field was then asked, ''Doctor, in your opinion can those changes be caused by trauma, such as a dropping of an object upon the toe?'' Dr. Field answered, ''Yes, that could be.''

Dr. Benjamin Cohen, called as a witness for the respondent, testified that x-rays taken of claimant's foot on April 9, 1943, on May 22, on July 31, and on August 27, 1943, all showed no break, but showed atrophic arthritis. The doctor also testified that the records of the Chicago State Hospital contain no report of an injury to the claimant other than her complaint made in

January, 1943, five months after the alleged injury. On cross-examination, Dr. Cohen stated that the causative factor of a condition such as claimant's is not a trauma, but an infection somewhere in the body which a trauma might aggravate.

Dr. George Procopie, called as a witness for respondent, testified that the x-ray of claimant's foot taken on April 9, 1943, showed no fracture, but showed a slight bone hypertrophy, a kind of arthritis, in some places atrophic. He testified that the x-ray taken on May 22, 1943, also showed no fracture, but a slight decalcification.

The claimant has the burden of proving the causal connection between the accident and the condition or incapacity which constitutes her claim for compensation. *Sanitary District* vs. *Industrial Commission*, 343 Ill. 236; *Sears Roebuck & Co.* vs. *Industrial Commission*, 334 Ill. 246. Liability can not rest upon imagination, speculation or conjecture, but must be based upon facts established by a preponderance of the evidence. *Springfield District Coal Company* vs. *Industrial Commission*, 303 Ill. 528. It can not rest upon a choice between two views equally compatible with the evidence. *Rittler* vs. *Industrial Commission*, 351 Ill. 338; *Carson-Payson Company* vs. *Industrial Commission*, 340 Ill. 632; *Mandell* vs. *State*, 12 C. C. R. 49.

From the record it is clear that claimant is suffering from atrophic arthritis in her left foot. It is undisputed that the x-rays show no fracture. It is not established, however, by the medical testimony that the arthritis was either caused or aggravated by the alleged injury. It appears rather that the present condition of claimant's foot is a result of the atrophic arthritis and not a result of the alleged injury.

Claimant has, therefore, not sustained her burden of proving the causal connection between the accident and her alleged incapacity. Any liability in this case would be based not upon facts, but upon conjecture. There are two views equally compatible with the evidence: (1) that claimant's disability is a result of the alleged injury; (2) that claimant's disability is the result of an arthritic condition.

An award must therefore be denied.