(No. 3899— ▮)

MAUDE CARLSON, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 12, 1946.*

JOSEPH W. KOUCKY, of Chicago, for claimant.

GEORGE F. BARRETT, Attorney General, and WILLIAM L. MORGAN, for respondent.

ECKERT, C. J.

Claimant, Maude Carlson, filed her complaint on January 24, 1945, alleging that on February 18, 1944,

while employed by the respondent at the Chicago State Hospital, and while in the discharge of her duties, she slipped and fell. She alleged that the fall resulted in an injury to her back and both legs. The complaint contains the necessary allegations as to notice to the respondent. It prays an award for temporary total disability, for total loss of use of both legs, and for partial permanent disability.

Within thirty days after the filing of the complaint, a report of the Department of Public Welfare, in which claimant had been employed, was filed by the respondent. Subsequently, and at its November term, this court entered an order on claimant to show cause why the complaint should not be dismissed for want of prosecution. Thereafter, on December 6, 1945, hearing was had, and the transcript of testimony was filed on April 3, 1946.

From the report of the Department of Public Welfare, it appears that claimant entered the employ of the Chicago State Hospital in February, 1928; that an injury to claimant was reported to the Department as having occurred on February 8, 1944. A copy of the report of the injury, made by Dr. B. Cohen, Staff Physician of the Chicago State Hospital, to the Department of Public Welfare, under date of February 8, 1944, shows that claimant, on that date, while working in the general dining room of the Chicago State Hospital, accidentally slipped and fell, and that the fall resulted in "tenderness about left wrist" with "no treatment necessary." The injury was classified as trivial.

Claimant, testifying on her own behalf, testified in part as follows:

"Q. You were working for the Chicago State Hospital in February, 1944; did anything unusual happen to you while working there at that time?
A. Yes.

Q. Now, tell us when did this happen, this unusual occurrence?
A. The 18th of February, I do believe.
Q. You are not sure?
A. Well, my dietician gave me the date, too, she has it down.
Q. What is the name of your dietician?
A. Miss Teller.
Q. Is she your head nurse?
A. She was then, but she is not there now."

She further testified, that while helping one of the patients, she slipped and fell, injuring her spine, her right foot at the ankle, and her left wrist; that she was sent to the hospital, where she was interviewed by Dr. Cohen; that she told Dr. Cohen that she had hurt her spine and her foot and her wrist; that Dr. Cohen examined her wrist and said, "I think you will be all right, Mrs. Carlson."; that he made no further examination; that she saw him two days later, at which time he examined her foot, and suggested she take diathermy treatments; that she took five such treatments, and saw Dr. Cohen each time, excepting once when he was not in the hospital.

Claimant also testified that during Dr. Cohen's absence another Doctor examined her foot; that he said, "My, my, you got a very serious blood clot in your foot"; that he ordered an X-ray taken; that after the X-ray was taken, the unnamed doctor ordered her to bed; that she stayed home the following Saturday and Sunday, returning to the hospital on Monday, and went to bed; that Dr. Cohen came to see her on Wednesday, examined her right leg, and ordered medication. On the following Friday, she testified, Dr. Cohen said she could go home, but should return to the hospital on Sunday; that when she went home her foot was paining her, and her husband insisted she see another doctor, also unnamed. She consulted this doctor only once, and testified that he said,

"Lady, you should be in bed. You have a very serious blood clot."

Claimant, however, returned to the hospital on Sunday, saw Dr. Cohen again on Wednesday, and remained in the hospital, under Dr. Cohen's care, for a period of twenty-one days.

During that period, she testified, another Doctor came to see her, also unnamed, who was said to be a blood clot specialist; that he told her, "Mrs. Carlson, I am going to try to get you well;" that he gave her shots in the arm and other medication; that at the end of the twenty-one days she went home, "because the doctor who said he would get me well, they would not let him in the hospital." She testified, however, that this same doctor had been called for her by the hospital, and that he was on the hospital staff. She testified that he said she had a sprained ankle, and wrapped her foot from the toes to the knees.

These wrappings were subsequently taken off by a Doctor Vaughan, whom claimant employed when she returned home at the end of the twenty-one day period. She testified that Dr. Vaughan wrapped both of her feet and legs in ice, and kept them in ice for nine weeks; that she remained in bed at home continuously for five months; that Dr. Vaughan came to see her every day "at first", and about twice a week after her condition improved.

Claimant testified that her right leg now "is very bad;" that "it just gives away on me and when I walk it don't bend in here;" that it is stiff in the ankle; that it swells when she walks on it, or when she stands on her feet all day. She stated that she wears a rubber stocking and when asked if she ever had any trouble with her right leg prior to this fall, stated; "I never did."

Upon further examination in regard to the date of the alleged injury, claimant again testified that she checked the date of the fall with her head nurse; that February 18th was the date given to her, and was the date which appeared in a record book kept by this nurse. The nurse, however, was not called as a witness, nor the record produced.

Dr. Albert C. Field, called as a witness on behalf of claimant, stated that he examined claimant on December 30, 1944; that he found the movements of her back were fairly well performed; that after bending forward and assuming the erect position, there was some spasticity of the lumbar muscles; that claimant complained on manipulation on the lumbar region; that both legs were discolored, reddened in appearance; that there was evidence of a marked circulatory disturbance; and that claimant had a phlebitis in both legs, an inflammatory condition of the veins of the legs, and a thrombosis. He testified that such a condition could be caused by a fall, and when asked if it were permanent, stated that it might be "some improved, but it would be a long time in doing it." On cross-examination Dr. Field stated that he was testifying as to an injury supposed to have occurred on February 18, 1944; that he knew nothing of the injury except that claimant fell and injured her right foot and back; that he knew nothing of an injury occurring on February 8th, 1944.

Dr. Benjamin Cohen, called as a witness for the respondent, testified that on the 8th of February 1944, he was a member of the staff of the Chicago State Hospital; that on that date he had a complaint that claimant had received an injury; that claimant told him she accidentally slipped and fell while working in the general dining room; that upon examination he found a tender-

ness about the left wrist; so trifling as to make treatment unnecessary. He stated he found no thrombosis, and no serious injury. He also testified that claimant had been a patient at the hospital on numerous occasions, both before and after the 8th of February, 1944; that she was hospitalized on March 4, 1944 for a period of twenty-one days; that she was treated by Dr. Ruess, a gynecologist, -because at that time she complained of a generalized tenderness throughout her body,. mostly her legs. On cross-examination, Dr. Cohen testified that from an examination on March 7th, he found a non pitting odema in claimant's legs which is generally due to a heart condition, but he found no indication of a thrombosis or phlebitis. He stated that claimant was very obese at the time of the alleged disability; that a thrombosis might be due to obesity because of the pressure on the veins, varicose veins being a prominent cause of phlebitis. On re-direct examination, Dr. Cohen stated that claimant made no complaint of an injury to her legs on February 8th.

The claimant was subsequently re-called, and testified that since her employment at Chicago State Hospital she had broken her left wrist, had injured her ribs, had had her gall bladder removed, had had one kidney removed, had broken her arm, and had had an emergency operation for appendicitis. Upon re-cross examination she testified that in January, 1944 she employed one Dr. Corbett as her physician. She could not recall the specific date in January, but stated that she knew "it was when Sonja Henie was here," about the middle of January; that she saw Dr. Corbett three times, having gone to him after the fall she sustained in the Stadium when she went to see Sonja Henie and fell down and bruised both knees.

From the record, it is clear that claimant has a bad

medical history; that she had a fall in January, 1944, serious enough to require medical treatment; that she fell while in the course of her employment on February 8th, 1944; that the only injury apparent on February 8th was an injury to her wrist. The record is conflicting as to whether or not there was a subsequent injury on the 18th of February, and as to the cause of the resulting disability. The testimony of the claimant is contradictory and wholly unsatisfactory.

Respondent's records show only the injury of February 8, 1944, an injury which the examining physician characterized as trivial. The testimony of the examining physician also clearly shows that a month later his examination did not disclose the condition which claimant insists resulted from an injury, not on February 8th, but on February 18th, 1944. Neither the head nurse who was alleged to have a record of the date of the injury, nor Dr. Ruess, whom the records show was available, and who treated claimant at the Chicago State Hospital, nor Dr. Vaughan, whom she selected and employed, and who treated her at home after she left the hospital, was called by claimant as a witness. Instead she produced a physician who examined her almost a year after the alleged injury, and whose opinion and diagnosis in part was based on subjective symptoms.

Claimant has the burden of proving the causal connection between the accident and the condition or incapacity which constitutes her claim for compensation. *Sanitary District* v. *Industrial Commission,* 343 Ill. 236; *Sears Roebuck & Company* v. *Industrial Commission,* 334 Ill. 246; *Mandell* v. *State,* 12 C. C. R. 29. Liability can not rest upon imagination, speculation or conjecture, but must be based upon facts established by a preponderance

of the evidence. *Springfield District Coal Company* v. *Industrial Commission,* 303 Ill. 528.

The court is of the opinion that claimant has not sustained her burden of proof; that any liability in this case would be based, not upon facts, but upon conjecture.

An award is therefore denied.

A. M. Rothbart Court Reporting Service, has filed a claim for taking and transcribing the testimony in this case. The charges in the amount of $57.00 are fair, reasonable and customary. An award is therefore entered in favor of A. M. Rothbart Court Reporting Service in the amount of $57.00.